UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLOS METOYER                    CIVIL ACTION

VERSUS                            NO: 07-1513

AUTO CLUB FAMILY INSURANCE        SECTION: "J" (5)
COMPANY

**ORDER AND REASONS**

Before the Court is Plaintiff's Motion in Limine to Exclude Evidence of Louisiana Recovery Authority Proceeds as a Collateral Source (Rec. Doc. 26), Plaintiff's Motion in Limine to Exclude Evidence of Flood Insurance Proceeds as a Collateral Source (Rec. Doc. 27), as well as Defendant's Motion for Leave to Amend Witness and Exhibit List (Rec. Doc. 25).  For the reasons explained below, the Court **ORDERS** that Plaintiff's Motion in Limine to Exclude Evidence of Louisiana Recovery Authority Proceeds as a Collateral Source (Rec. Doc. 26) is **GRANTED;** Plaintiff's Motion in Limine to Exclude Evidence of Flood Insurance Proceeds as a Collateral Source (Rec. Doc. 27) is **DEFERRED TO TRIAL;** and Defendant's Motion for Leave to Amend Witness and Exhibit List is **GRANTED.**

**A. Plaintiff's Motion in Limine to Exclude Evidence of Louisiana Recovery Authority Proceeds as a Collateral Source**

**1. Procedural History and Background Facts**

Plaintiff Carlos Metoyer sustained damage to his New Orleans home as a result of Hurricane Katrina and filed suit on March 1, 2007 to recover sums alleged due under his insurance contract with Defendant.  Plaintiff has recovered $57,907.62 from Defendant Auto Club Family Insurance Company ("ACFIC") for covered losses (i.e. wind) and $128,000 from flood insurer Allstate for structural damages.  Additionally, Plaintiff was awarded a $150,000 grant from the Louisiana Recovery Authority ("LRA") to rebuild his home and a $10,000 grant from the U.S. Small Business Association.

**2. Parties' Arguments**

Plaintiff argues that the LRA funds constitute a collateral source, and therefore he seeks to have any evidence of LRA funds excluded from evidence so as not to taint the jury.  Moreover, Plaintiff asserts that ACFIC should not be allowed to introduce evidence of LRA proceeds as a credit to absolve itself of liability under the insurance contract.

Given the lack of case law regarding the application of the collateral source rule to LRA proceeds, Plaintiff seeks to apply the framework employed by the United States District Court of the

Virgin Islands in *Antilles Ins., Inc. v. James*.  No. 92-27, 1994
WL 371405 (D.V.I. 1994).[1]  In *Antilles*, plaintiffs suffered
losses to their home in St. Croix caused by Hurricane Hugo.  *Id.*
at *1.  While seeking the proceeds from their insurance policy,
Plaintiffs received payment from the Virgin Islands Hurricane
Hugo Insurance Claims Fund Program ("Hugo Fund").  *Id.* at *8.
Uncompensated for their insured losses, Plaintiffs brought suit
against their insurer for negligence in failing to disclose
information about its affiliation with another insurance company.
*Id.* at *1.  Afer a jury trial, plaintiffs were awarded damages
for their property damage claim and loss of use.  *Id.* at *2.  On
appeal, defendant insurer argued that the application of the

_____

[1]The District Court of the Virgin Islands is not a Court of
the United States as that term is usually thought of.  *See United
States v. George*, 625 F.2d 1081, 1088 (3rd Cir. 1980).  While
Federal Law establishes a District Court for the Virgin Islands,
and vests it with the same jurisdiction of district court of the
United States for cases arising under the Constitution, treaties
and laws of the United States, as well as diversity cases, its
powers are broader as a court of the territory than a United
States District Court. *See* 48 U.S.C. § 1612.  In essence, the
District Court of the Virgin Islands functions as a District
Court of the United States would, and also as an appellate court
for the territorial court of the Virgin Islands.  *See* 48 U.S.C.
§§ 1611-1613a.
    In the *Antilles* case cited by the Plaintiff, the court was
sitting as an appellate court for the territory of the Virgin
Islands, and not as a federal district court would.  Because the
court is not sitting as a federal court, it must apply the law of
the Virgin Islands. *See e.g., Gen. Eng'g Cor. v. Martin Marietta
Alumina*, 783 F.2d 352, 357-58 (3rd Cir. 1986).  Therefore, any
holding the *Antilles* court must be persuasive in nature, and only
insofar as a state supreme court would be.

collateral source rule was inappropriate.  *Id.* at *8.

The court upheld the application of the collateral source rule, largely focusing on the purpose of the Hugo Fund payments. *Id.* at *9.  The court reasoned that the Hugo Fund was designed to benefit the Virgin Islands rather than "to discharge any liability or obligation of a tortfeasor such as Antilles." *Id.* at *10.  Likening the LRA to the Hugo Fund, Plaintiff here argues that LRA proceeds should not result in a credit against ACFIC's liability.  Furthermore, in being forced to recover from outside sources, that is, the LRA, Plaintiff claims the diminution of his patrimony was an additional damage which justifies the additional proceeds.

Defendant counters that the collateral source rule only applies to situations involving actions in tort, not breach of contract.  Additionally, Defendant rebuts Plaintiff's claim that his patrimony was diminished because he provided no consideration for the LRA benefit.  Defendant then goes on to distinguish the instant matter from *Antilles*: this case is based on breach of contract, whereas *Antilles* involved a tort action; this case poses a coverage dispute, whereas property damages were adjusted and submitted in *Antilles*; and in *Antilles*, Hugo Fund money was awarded to pay what was owed to plaintiff, whereas in this case the LRA grant was not awarded for such a purpose.

4

**3. Discussion**

As Plaintiff correctly points out, no Louisiana state or federal court has addressed the issue of whether LRA benefits should be excluded as a collateral source. *See Naccari v. State Farm Fire & Cas. Co.*, 2007 WL 4374226, at *2 (E.D. La. 2007) ("[T]he plaintiff has failed to support his contention that the collateral source doctrine applies to insurance recovery cases with any controlling case law. Accordingly, this Court declines to address this bare assertion.")

It seems helpful to divide the inquiry into two separate issues.  The first question that must be answered is whether the collateral source rule applies to actions in contract.  The second question that must be answered is whether the collateral source rule should apply in this situation.

a.  *Does the Collateral Source Rule Apply to Actions in Contract*?

Commentators have noted that courts have rarely considered whether the collateral source rule applies in contract actions. *See e.g.* John G. Fleming, *The Collateral Source Rule and Contract Damages*, 71 CAL. L. REV. 56, 56 & n.1 (1983); Richard C. Witzel, Jr., *The Collateral Source Rule and State-Provided Special Education and Therapy*, 75 WASH. U.  L.Q. 697, 703 n.27 (1997).  In order to answer the question in the proper context, it is helpful to first explore the history and purpose of the rule.

5

The Louisiana Supreme Court recently explored the history and application of the rule in Louisiana courts.  *See Bozeman v. State*, 879 So. 2d 692 (La. 2004).  The Court noted that the collateral source rule is "a rule of evidence and damages that is of common law origin, yet embraced and applied by Louisiana courts."  *Id.* at 697 (*citing La. Dep't of Transp. & Dev. v. Kan. City So. Ry. Co.*, 846 So. 2d 734, 739 (La. 2003); Deborah Van Meter, *Louisiana's Collateral Source Rule: Time for a Change?*, 32 Loy. L. Rev. 978, 989-90 (1987)).  The supreme court cited and adopted the rule to be used in Louisiana from the Restatement (Second) of Torts § 920A (1979).[2]  Under the rule, as applied in Louisiana, the court held the a "tortfeasor may not benefit . . . because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.  *Bozeman*, 879 So. 2d at 698 (*citing Kan. City So. Ry.*, 846 So. 2d at 739-40)).  The court further noted that the rule has been applied to a variety of situations "although it typically applies

_____

[2] That section provides as follows: "(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm fro which the tortfeasor is liable."  Restatement (Second) of Torts § 920A (1979).

to tort cases." *Id.*[3]

In the tort context, courts have cited many reasons for the existence of the collateral source rule. As stated above, the most common reason for the rule is that a defendant should not be allowed to benefit from the outside benefits provided for the plaintiff. *See Bryant v. New Orleans Pub. Serv. Inc.*, 406 So. 2d 767, 768 (La. App. 4 Cir. 1981). The *Kansas City Southern Railway* court recognized that the classic example of the collateral source rule occurred in insurance cases. The classic formulation of the rule is that a tortfeasor's liability should be the same, regardless of whether the plaintiff had the foresight to buy insurance. *Kan. City So. Ry.*, 846 So. 2d at 740.

Louisiana courts have held that this "double recovery" is not a windfall for a plaintiff at all. The *Bryant* court held that "no windfall . . . occurred because the injured party's patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was additional damage suffered by him." *Bryant*, 406 So. 2d at 768. In terms of insurance, the *Bryant* court determined that the plaintiff has paid premiums which are a diminution of his

---

[3]The court noted that the rule was applied to a worker's compensation case involving services rendered by the United States Department of Veterans Affairs and even welfare payments. *Bozeman*, 879 So. 2d at 698. These cases will be discussed *infra*.

patrimony as that cash would otherwise have been available to him. *Id.* The court continued that a plaintiff who is forced to recover from his insurance policy has suffered a diminution of his patrimony by the premium payments, in addition to a fear that his insurance rate will rise. *Id.*

If these were the only reasons given for the collateral source rule, it would be easy to declare that its application should be applied in this case. However, the *Bozeman* court continued that a "major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence." *Bozeman*, 879 So. 2d at 700. Therefore there is an element to punitive damages to a collateral source award. In general, Louisiana law prohibits punitive or exemplary damages in contract actions. *See Corbello v. Iowa Prod.*, 850 So. 2d 686 (La. 2003); *Mobley v. Mobley*, 852 So. 2d 1136 (La. App. 2 Cir. 2003); *Montz v. Theard*, 818 So. 2d 181, 190 -91 (La. App. 1 Cir. 2002).[4] However, Professor Fleming, disposes of this argument.

---

[4] It is worth noting that insurance companies have been considered to be companies that provide a vital public service, and therefore unjustifiable breach by such a company of its contract of insurance can sometimes lead to punitive damages. *See* La. Rev. Stat. Ann. §§ 22:658, :1220; 6 Saul Litvinoff, Louisiana Civil Law Treatise, Law of Obligations § 7.5 (2d ed. 2007). Professor Litvinoff allows that the punitive damages allowed by sections 658 and 1220, while exceptions to the general rule preventing exemplary damages, are tightly controlled by statute and regulation. *See* Litvinoff, *supra* § 7.6.

He argues that American law does not shrink from deliberate undercompensation, as is shown by our insistence that plaintiffs are to pay their own attorneys' fees. Fleming, *supra* at 62. Further, even though the law often recognizes the concept of efficient breach, it questionable what effect the application of the collateral source rule would have on the doctrine. It seems especially questionable whether the possibility of a third party benefit inuring to the aggrieved party would enter into the calculations of an efficient breacher. *Id.* Therefore, Professor Fleming concludes that "the policies underlying the law of contract do not dictate an application of the collateral source rule different from that in tort." *Id.*[5]

In the case at bar, the Defendant seeks to claim that the collateral source doctrine does not apply to actions for breach of contract. In support of its position, Defendant cites *Campbell v. Markel Am. Ins. Co.*, 822 So. 2d 617, 622-23 (La. App. 1 Cir. 2001). Defendant cites *Campbell* for the specific

---

[5]*But see Pan Pac. Retail Props v. Gulf Ins. Co.*, 471 F.3d 961, 973 (9th Cir. 2006). In *Pan Pacific*, the Ninth Circuit, applying California law, concluded that a plaintiff in a breach of an insurance contract cannot benefit from the collateral source rule because to do so would violate the "contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance." *Id.* In other words, the *Pan Pacific* court was concerned that the plaintiff would end up with a double recovery. That fear is unfounded in the case at bar because of the subrogation of the LRA to the insured.

proposition that "rules applicable to recovery in tort do not apply to an action on a contract of insurance." *Id.* at 623; *see also Sher v. Lafayette Ins. Co.*, 973 So. 2d 39, 52-53 (La. App. 4 Cir. 2007) (holding that a lawsuit for failure to pay on an insurance contract does not sound in tort).  In *Campbell*, the court considered whether a motorcycle collision policy, which provides that the insurer agrees to repair or replace the damages motorcycle, obligates the insurer to compensate the insured for any diminution in market value that might remain after the insurer has paid for a repair job.  *Campbell*, 822 So. 2d at 618. In concluding that it does not, the court noted that this was a first party contract dispute, and not an instance where the insured is suing the tortfeasor's insurance company for compensation.  *Id.* at 622-23.  The court held that it would focus on the language of the contract between the parties in determining the appropriate award of damages.  *Id.*

Therefore the *Campbell* case is notably different from the case at bar.  In the case at bar, the defendant is not arguing that there is a specific provision of the insurance contract that would prohibit application of the collateral source rule, but rather the defendant asserts a general principle of law that the collateral source rule does not apply to contract actions.  Even more so, defendant is correct that *Bozeman* refers to the

10

collateral source rule as a rule most often applicable in the tort context. *Bozeman*, 879 So. 2d at 697.  However, there is nothing in *Bozeman* which would prohibit the application of the rule in actions outside of tort.  Indeed, the *Bozeman* court cited at least one instance in which Louisiana courts have applied the collateral source rule outside the tort context.  In *Smith v. Roy O. Martin Lumber Co.*, 871 So. 2d 661 (La. App. 3 Cir. 2004), the Court of Appeal approved of the use of the collateral source rule in a workers' compensation claim.[6]

Defendant is correct that in this case, Plaintiff's petition alleges a breach of contract and not a tort.  Plaintiff has not pointed to a single case where the collateral source rule was applied to actions for breach of contract.  While the Court could not find any Louisiana case which held such, several cases from other jurisdictions have addressed the issue. A recent California case seems to encompass the rule well.  In *El Ecsorial Owners' Ass'n v. DLC Plastering, Inc.*, 65 Cal. Rptr. 3d 524, 542 (Cal. Ct. App. 2007), the California Court of Appeal considered an action by a condominium owners' association against multiple contractors and subcontractors relating to construction defects.

---

[6]A workers' compensation claim is an exclusive remedy that precludes recovery in traditional tort.  *See Noonan v. City of New Orleans*, 972 So. 2d 344, 348 (La. App. 4 Cir. 2007)(*citing Deshotel v. Guichard Operating Co.*, 916 So. 2d 72, 76-77 (La. 2004)).

The court noted that the collateral source rule is generally not used in breach of contract claims.  However, the court continued that "where a person suffers property damage, the amount of damages shall not be reduced by the receipt by him of payment for his loss from a source wholly independent of the person who caused the injury."  *Id.* (*citing Patent Scaffolding Co. v. William Simpson Const.*, 64 Cal. Rptr. 187, 191 (Cal. Ct. App. 1967); *Shaffer v. Debbas*, 21 Cal. Rptr. 2d 110, 113 (Cal. Ct. App. 1993)).  The Court essentially held that even though the action was termed a breach of contract, the action had elements of tort because the plaintiff had to prove that the construction was substandard or negligently performed.[7]

---

[7] To be sure, there are cases which have held that the collateral source rule cannot be used in breach of contract actions.  In *Four Seasons Mfg. v. 1001 Coliseum, LLC,* 870 N.E. 2d 494, 507 (Ind. Ct. App. 2007), the court held that in a breach of contract claim, a non-breaching party is not entitled to be put in a better situation than he would have been had the contract not been breached.  Therefore, the court held that a non-breaching party is required to mitigate his damages, and the breaching party is entitled to set off the amount of the damages mitigated.  *Id.*  Neither party seems to be suggesting that the LRA or Road Home is a form of mitigation of damages.  Indeed, it seems that the Defendant in this case would dispute that reading, as it would admit liability on their part, as well as possibly make it easier to subject them to penalties under sections 1220 and 658.  *See also State ex. rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 829 N.E. 2d 298, 308 (Ohio 2005)(issuing a blanket holding that the rationale that supports the collateral source rule is inapposite to breach of contract actions).

Therefore, it seems that there cannot be a blanket prohibition of the application of the collateral source rule to contract claims as the defendant suggests.  Even if such a claim could be sustained, it is not clear that there is not an element of tort in Plaintiff's claim, despite its title as a "Breach of Contract". (Rec. Doc. 1-2, at 1).  Violations of section 1220 or 658 generally sound in tort, and therefore, there is an element of a tort claim to Plaintiff's action.  *See Stokes v. Allstate Indem. Co.*, No. 06-1053, 2007 WL 1875847 (E.D. La. June 28, 2007)(holding that section 1220 provides an exclusive remedy for tort like actions against an insurer)(*citing Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 188 (La. 1997)); *Harrell v. Fidelity Sec. Life Ins. Co.,* No. 07-1439, 2008 WL 170269 (E.D. La. Jan. 16, 2008)(Barbier, J.); *see also* (Rec. Doc. 1-2, at para. 7).

## b. Should the Collateral Source Rule Apply in this Situation?

Defendant claims that the collateral source rule should not apply because the Plaintiff's patrimony was not diminished in accepting the LRA money.  Defendant's argument is inapposite to the case at bar.  Defendant is correct that Louisiana courts have held that the collateral source rule does not result in double recovery or a windfall because plaintiff's patrimony is diminished when he goes against the collateral source for

recovery.  *See Bryant*, 406 So. 2d at 768.  While the *Bryant* court explained that this diminution of patrimony is what prevented a double recovery, the court did not hold that a reduction in a person's patrimony is *required* in order to prevent double recovery.

Even assuming that Defendant is correct, and that Plaintiff's patrimony is not diminished, this conclusion does not prevent the application of the collateral source rule.  In *Bonnet ex rel. Bonnet v. Slaughter*, 422 So. 2d 499, 503 (La. App. 4 Cir. 1982), the court considered a tort claim wherein a woman claimed lost wages for the time she had to spend with her injured son. The defendant claimed that the woman collected welfare during this time, and therefore defendant should be entitled to a credit against the lost wages claim for the amount that welfare paid. The court held that welfare payments were a collateral source, and therefore defendant is not entitled to such an offset.  *Id*. Without delving too deeply into the facts of how the welfare program was run in 1982, the *Slaughter* court does not mention whether the plaintiff's patrimony was diminished in any way by accepting welfare payments.

In *Bozeman*, the Louisiana Supreme Court held that a tort victim who received medical care through Medicaid cannot recover the write-off amount above what Medicaid paid for the medical

14

care. *Bozeman*, 879 So. 2d at 705.  The court based its reasoning partly on the fact that Medicaid is a completely free service to the nation's poor, and is not funded through contributions by the patient, or the patient's employer.  Therefore there is not a reduction in the victim's patrimony.  In *Bozeman*, there is a danger of double recovery, because the victim would have received the medical care, and an amount above what the medical care cost the public.  For public policy reasons, the court held that the plaintiff was not entitled to the higher amount.

In the case at bar, there is no danger of a double recovery or windfall.  The LRA is a program whose intent is to compensate Louisiana homeowners affected by Hurricane Katrina.  *See* http://www.road2la.org/about-us/default.htm.  The program is provided free of cost to eligible homeowners and is funded by a grant through the United States Department of Housing and Urban Development. *Id.* The LRA required that, when it awards a grant, it will be subrogated to the rights of the homeowner with regards to insurance payments.  *Id.*  Therefore the Plaintiffs should not be put in the position greater than they were before a breach of contract.

This subrogation right negates the negative effects of the collateral source rule in a contract claim.  *See Lexington Ins. Co. v. Western Roofing Co.*, 316 F. Supp. 2d 1142, 1152-53 (D.

Kan. 2004); Fleming, *supra* at 85 ("[S]ubrogation is often the optimal solution to this dilemma").  In this case, the subrogation rights of the LRA prevents a double recovery. Further, it could not have been the intention of the Federal Government grant writers, or the Louisiana Legislature that insurance companies should benefit from the provisions of the LRA.  Otherwise there would not have been any reason to include the subrogation right in the LRA grant awards.

Finally the Court notes that if the Defendant's position is adopted, it will amount to a windfall, not for plaintiffs, but for insurers.  Accordingly, Plaintiff's Motion in Limine to Exclude Evidence of Louisiana Recovery Authority Proceeds as a Collateral Source will be **GRANTED.**

## B. Plaintiff's Motion in Limine to Exclude Evidence Flood Insurance Proceeds as a Collateral Source

Plaintiff seeks to exclude evidence of flood insurance proceeds as a collateral source, and relies on the collateral source rule as its reason for exclusion.  The collateral source rule, its policies, and history of the rule have been discussed above.

Plaintiff argues that flood insurance payments on the property represent a collateral source that is independent of the homeowner's insurance contract.  The Defendant, as it did above,

16

contends that the collateral source rule cannot be applied in a breach of contract action.  To the extent that defendant is arguing a blanket prohibition of the rule's application, that argument must be rejected for the reasons already explained.

Courts in this state have routinely held that a plaintiff is not permitted double recovery from insurance for the same loss, and Louisiana courts are in accord.  *See Albert v. Farm Bureau Ins. Co.*, 940 So. 2d 620, 622 (La. 2006).  Therefore the question becomes an issue of whether the Plaintiffs are seeking a double recovery for the same damage.

In *Weiss v. Allstate Ins. Co.*, 06-3774, 2007 WL 891869 (E.D. La. Mar. 21, 2007), Judge Vance denied a motion for summary judgment by the insurance company, seeking a credit for the flood payments already paid.  After deciding that the allegations in the case were that the house in question was destroyed by a mixture of water and wind, and that the value of the home is in excess of the flood and wind policies combined, the court decided that summary judgment was inapporiate, given that there were still issues of unresolved facts that surrounded both of those determinations.

In *Esposito v. Allstate Ins. Co.*, No. 06-1837, 2007 WL 1125761 (E.D. La. Apr. 16, 2007) Judge Zainey granted a defense motion for summary judgment in a similar matter because, unlike

17

in *Weiss*, the plaintiff's action was premised on recovery for wind and flood related to the same loss.

Therefore the main question before the Court is whether the recovery sought by the Plaintiff is duplicative of the recovery already received under the flood insurance policy.  At this time, from the briefs submitted, it does not appear that the Court is in a position to make this ruling.  Too many facts are unknown, including the exact nature of what the Plaintiff is claiming in damages, and the extent of coverage for the flood insurance. Accordingly, Plaintiff's Motion in Limine to Exclude Evidence of Flood Insurance Proceeds as a Collateral Source (Rec. Doc. 27) is **DEFERRED TO TRIAL.**

## C. Defendant's Motion for Leave to Amend Witness and Exhibit List

No opposition has been filed to this motion.  Defendant filed its witness list on January 11, 2008 before the deadline of January 15.  On January 29, defendant deposed Ray Bishop, a general adjuster, who stated that he was faxed two estimates by plaintiff's counsel from Augustino Bros. who offered to preform repairs on the house for the bid price.  Defendant claims that it had not learned of Augustine Bros. prior to this date, and that the information provided by Augustino will provide information relevant to the value of the home in question, and the extent of damages.

18

In the absence of meaningful opposition, Defendant's Motion for Leave to Amend Witness and Exhibit List (Rec. Doc. 25) is **GRANTED**.

**CONCLUSION**

For the reasons enumerated above, the Court issues the following orders:

**IT IS ORDERED** that Plaintiff's Motion in Limine to Exclude Evidence of Louisiana Recovery Authority Proceeds as a Collateral Source (Rec. Doc. 26) is **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine to Exclude Evidence of Flood Insurance Proceeds as a Collateral Source (Rec. Doc. 27) is **DEFERRED TO TRIAL;** and

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to Amend Witness and Exhibit List is **GRANTED.**

New Orleans, Louisiana this the 10th day of March, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE